**Ronnie R. CEASAR, Plaintiff,**

v.

**LAMAR UNIVERSITY, Defendant.**

No. Civ.A. 199CV124.

United States District Court,
E.D. Texas,
Beaumont Division.

April 3, 2001.

548

Ronnie R. Ceasar, Lake Charles, LA, plaintiff pro se.

Kathlyn Clair Wilson, Joey W. Moore, Office of the Attorney General, Austin, TX, for defendant.

## MEMORANDUM OPINION

COBB, District Judge.

Before the Court is Defendant's Motion for Summary Judgment [21], and the Court having reviewed the motion in the light of no response having been provided by the Plaintiff is of the opinion that the motion be GRANTED.

### I. Background.

Plaintiff Ronnie Ceasar is an African–American who was employed by Defendant Lamar University from May 1995 through August 14, 1998, originally in the physical plant and later in the position of "Accountant I." He was hired at the base rate for that job, commensurate with his experience. He was subsequently transferred to an accountant position in the University's payroll department in February, 1996, and then to the student financial aid department in October, 1996. Mr. Ceasar's complaint centers on the period from about June or July of 1997 to the date he was fired on August 14, 1998.

Mr. Ceasar's cause of action in this Court stems from activity he alleged to the Equal Employment Opportunity Commission ("EEOC") and the Texas Commission on Human Rights ("TCHR") on May 13, 1998:

I. Since about June/July 1997, I have been subjected to unequal wages as compared to my co-workers. On or about September 22, 1997, I was denied a promotion from Accountant I to Su-

pervisor Student Aid Accounting. On this same day, I reported a discriminatory practice to Cliff Clay, Bursar. Around mid October 1997, and again on March 17, 1998, I was denied training for Electronic Funds Transfer. On or about January 15, 1998, and February 23, 1998, I was written up and placed on 90 day probation. Since about February 25, 1998, I have been out on sick leave. Around April 1998, I have not been allowed to use my comp time since I have exhausted all my sick leave.

II. No legitimate reasons exist to warrant the above cited acts. I attempted to resolve the above matter in-house through management, but to no avail. Mr. Clay informed me that the successful candidate had previous experience, denied me the training, gave me the write ups and placed me on probation.

III. I believe I have been discriminated against because of my race, Black, in retaliation for opposing a discriminatory practice, in violation of Title VII of the Civil Rights Act of 1964, as amended, and age, 45, in violation of the Age Discrimination in Employment Act of 1967, as amended.

Plaintiff's Complaint at 3 (attachment without exhibit marking). Based on this complaint, Mr. Ceasar obtained an EEOC "Right to Sue" letter entitling him to file suit on his Title VII and ADEA claims within ninety days of the issuance of that letter on February 26, 1999.

Mr. Ceasar filed this *pro se* complaint on March 8, 1999, alleging that he was denied training, promotion and equal pay. He also claims he was placed on probation and was ultimately fired from his job based on his race. His complaint alleges violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.2000e, *et. seq.* The complaint does not allege a violation of the ADEA. He is seeking one million dollars each in compensatory and punitive damages. This case was originally assigned to District Judge Fisher. Mr. Ceasar sought permission to proceed *in forma pauperis,* which was granted by Magistrate Judge Hines. He also sought court assigned counsel, which was denied by Judge Fisher. He entered an interlocutory appeal of that denial to the Fifth Circuit Court of Appeals on September 22, 1999, which was dismissed by that court on February 16, 2000, for Mr. Ceasar's failure to file a brief on the appeal. Following Judge Fisher's death in June, 2000, the case was reassigned to this Court. A case management conference was conducted with Mr. Ceasar and counsel for Lamar University, Mr. R. Chad Geisler, Assistant Attorney General for the State of Texas, on December 19, 2000. By Docket Control Order entered December 28, 2000, a trial docket date of April 9, 2001 and intermediate deadlines were established.

Lamar University filed an answer to the complaint that Mr. Ceasar would have been fired for his poor performance and his lengthy and frequent absences regardless of his race. Mr. Ceasar filed a reply to the University's answer titled "Plaintiff's Answer and Offer of Settlement" in which he further asserted the University's "guilt" and offered to settle the case for $100,000.00 with the added statement, "Otherwise, I will seek and retain counsel and it won't be pretty." [1] The University now seeks summary judgment.

---

1. The Court is aware of the FED.R.EVID. 408 exclusion of settlement negotiations as evidence. Mr. Ceasar placed this matter before the Court by entering it as part of a pleading addressed "To the Honorable Judge of Said Court." Its tone is indicative of the plaintiff's attempts to threaten the defendant. However, the Court does not consider this putative "settlement offer" as evidence in ruling on the motion at bar. The pleading itself adds

## II. The Standard on Summary Judgment.

Rule 56(c) of the Federal Rules of Civil Procedure allows a court to grant summary judgment on issues presenting no genuine issue of material fact. Summary judgment is proper when the movant is able to demonstrate that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Col., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 585–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A fact is material if it might affect the outcome of a case under the governing substantive law. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is unnecessary for the movant to negate elements of the non-movant's case. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 885–6, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

Once the material facts are assessed, the court must determine whether the evidence reveals the presence of genuine factual issues. A genuine issue exists when, in the context of the entire record, a reasonable fact-finder could return a verdict for the non-movant. *Id.* The court must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment. *See Eastman Kodak v. Image Technical Services*, 504 U.S. 451, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356 (1986); *Lemelle v. Universal Mfg.*

*Corp.*, 18 F.3d 1268, 1272 (5th Cir.1994). However, this favorable presumption for the non-movant exists only when the non-movant presents an actual controversy of fact. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994).

To avoid a summary judgment, the nonmoving party must adduce admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case. Unsubstantiated assertions of an actual dispute will not suffice. *See Thomas v. Price*, 975 F.2d 231, 235 (5th Cir.1992) (citing *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2553–54, 91 L.Ed.2d 265). Once the moving party presents the district court with a properly supported summary judgment motion, the burden shifts to the nonmoving party to show that summary judgment is inappropriate. *See Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 777 (5th Cir.1997). In doing so, the nonmoving party may not rest upon the mere allegations or denials of its pleadings, and unsubstantiated or conclusory assertions that a fact issue exists will not suffice. *Id.* (citing *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14, 91 L.Ed.2d 202).

A plaintiff's failure to respond to a motion for summary judgment does not, by itself, support granting summary judgment. The moving defendant must establish the absence of a genuine issue of material fact. *See John v. Louisiana*, 757 F.2d 698, 709 (5th Cir.1985); *Jones v. Fountain*, 121 F.Supp.2d 571, 572 (E.D.Tex.2000). However, the court will assume that the movant's facts as claimed and supported by admissible evidence are admitted to exist without controversy, unless controverted in an opposing statement of genuine issues which is supported by proper summary judgment evidence.

nothing to substantiate Mr. Ceasar's allegations.

"The court will not scour the record in an attempt to determine whether the record contains an undesignated genuine issue of material fact for trial before entering summary judgment." *See* E.D.Tex. Local Court R. 56(c); *Jones v. Fountain,* 121 F.Supp.2d at 572. District courts may adopt such local rules requiring an opposing party to file a statement of opposition so long as judgment is not automatically rendered on behalf of the movant if the non-movant fails to file such a statement. *See John v. Louisiana,* 757 F.2d at 708.

Summary judgment is generally considered an inappropriate means of resolving employment discrimination claims because they often represent "nebulous questions of motivation and intent." *See Hayden v. First National Bank,* 595 F.2d 994, 997 (5th Cir.1979); *EEOC v. Southwest Texas Methodist Hospital,* 606 F.2d 63, 65 (5th Cir.1979), *cert. denied,* 445 U.S. 928, 100 S.Ct. 1314, 63 L.Ed.2d 761 (1980). Motivation and intent often are proved only "through circumstantial evidence; determinations regarding motivation and intent depend on complicated inferences from the evidence and are therefore peculiarly within the province of the factfinder." *See Thornbrough v. Columbus & Greenville R. Co.,* 760 F.2d 633, 647 (5th Cir.1985). However, if the defendant presents strong evidence of a legitimate, nondiscriminatory reason for its actions, and the plaintiff is unable to counter with additional evidence of pretext, summary judgment may be appropriate. *See Armstrong v. City of Dallas,* 997 F.2d 62, 67 (5th Cir.1993).

In its December 28, 2000, Docket Control Order, this Court established that the trial docket call date for this case is April 9, 2001, and that the deadline for filing dispositive motions was March 1, 2001. Defendant Lamar University met that deadline by filing the instant motion for summary judgment on that date. The fact that the University intended to file such a summary judgment motion was specifically discussed during the case management conference in which Mr. Ceasar participated. The University provided the Court with a Certificate of Conference in which defendant's counsel certified that he communicated with Mr. Ceasar on March 1, 2001, and that "Plaintiff is opposed to Defendant's motion for summary judgment." Mr. Ceasar signed for receipt of a copy of the motion on March 6, 2001.

The deadline for responding to dispositive motions was established as March 21, 2001. Plaintiff Ceasar did not favor the Court with any response to Lamar University's motion by that date, and has not offered any since. He has not requested a continuance nor identified a requirement for any additional discovery to permit him to respond. He has otherwise communicated with the Court, including his written request to participate in the case management conference by telephone and by timely providing his witness list in accordance with the Docket Control Order. Presumably, if those witnesses would be effective on Mr. Ceasar's behalf during a trial, then he could have obtained affidavits from them establishing a fact issue in opposition to the University's motion. Obviously, he has not done so any more than he pursued his earlier interlocutory appeal to the Fifth Circuit. Lamar University's motion is well-supported by affidavit (Director of Human Resources for Lamar University), by the statements made by Mr. Ceasar during his deposition conducted October 18, 2000, and by copies of letters and medical memoranda. This Court will therefore proceed based on the presumption that the assertions made by Lamar University in its motion for summary judgment are true as supported by proper summary judgment evidence.

### III. Analysis.

A Title VII action is analyzed under the familiar and flexible burden-shifting approach whereby a plaintiff must first establish a *prima facie* case that his employer took an adverse employment action improperly motivated by race. He may do so by circumstantial evidence from which discriminatory intent may be inferred. To make out a circumstantial case, the plaintiff must show (1) that he is a member of a protected class, (2) that he was at all times qualified for the position at issue, (3) that he was nonetheless refused employment or an employment benefit, and (4) that the employment or employment benefit went to an individual who differs from the plaintiff with regard to that class. Once the plaintiff has established such a *prima facie* case, the burden shifts to the defendant employer to rebut the inference of discrimination by producing a legitimate, non-discriminatory business justification for the action. Once having done that, the employer's burden of production evaporates, and it is left for the plaintiff-employee to prove that he suffered from improper discrimination, and that the employer's asserted legitimate justification was mere pretext and did not actually motivate the employment action. *See Lacy v. Sitel Corp.*, 227 F.3d 290, 293–94 (5th Cir.2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).

It is uncontested that Mr. Ceasar is African–American and therefore a member of a protected class under Title VII.

### A. Claim of Unequal Pay.

█ Plaintiff claims he was paid less than his co-worker, Barbara Wilson, who is white. Both were employed in the category of "Accountant I." Ms. Wilson was hired at the high end of pay for that position while Mr. Ceasar was paid the entry level salary. However, Mr. Ceasar undercut his own *prima facie* presentation by admitting in his oral deposition taken on October 18, 2000, that the fact that Ms. Wilson was paid more was not based on discrimination. He claimed, instead, that "the jobs are supposed to pay the same." He had no justification for that position.

Further, Mr. Ceasar agreed that while Ms. Wilson was an Accountant I in the Finance Department, he was an Accountant I assigned to the Payroll Office and later to the office of Student Financial Aid Accounting. At the pertinent times, the two were in different departments with different job requirements. Mr. Ceasar has never averred that he was qualified to perform in the job assigned to Ms. Wilson, just that the two positions—with a similar title—should pay the same.

Lamar University submitted an affidavit by Jo Ann Russell, the Director of Human Resources of the University, explaining that Ms. Wilson was hired at the "high end" of the pay scale for Accountant I because of her "exceptional experience consistent with then current needs of the Finance Department" and because she had "excellent references." She also swore that Mr. Ceasar had been promoted to Accountant I out of the University's physical plant at the entry level salary because of his "limited experience in higher education and payroll administration." His subsequent transfer to another department, at his request, was a lateral one and did not involve a higher level position.

A plaintiff's disparate treatment case fails where he compares his treatment to another employee but cannot show that the other employee was similarly situated. *See Krystek v. University of S. Mississippi*, 164 F.3d 251, 257 (5th Cir.1999), *Nieto v. L & H Packing Co.*, 108 F.3d 621, 623 (5th Cir.1997). Different positions with

different qualifications, even if they are superficially comparable, are not "similarly situated." *See Krystek* 164 F.3d at 257 (tenure track versus non-tenure track professors are not "similarly situated" where there are different qualification requirements for the positions). Employees with different levels of experience are not "similarly situated" for purposes of Title VII salary comparison. *See Nunnery v. Elgin Joliet Eastern Railway Co.*, 48 F.Supp.2d 1122, 1131 (N.D.Ind.1999). Here, Ms. Wilson's position was in a different department from Mr. Ceasar's, with different job qualification requirements. They were working for two different supervisors. Ms. Wilson was hired with a proven track record of experience and references, which Mr. Ceasar lacked. Despite the similar titles, there is adequate evidence that Ms. Wilson's position in the Finance Department carried a higher requirement for experience, which she had, than the position for which Mr. Ceasar was hired. That she was hired at the higher end of the position's pay scale because of her experience is not surprising nor is it any indication of discrimination. Mr. Ceasar has not claimed he was qualified to do the job for which Ms. Wilson was hired, nor is there any evidence that he applied for or was denied that job.

Mr. Ceasar does not make out a *prima facie* case in his disparate pay claim and has certainly showed no evidence to rebut Lamar University's non-discriminatory explanation of the difference in pay as pretext supporting discrimination against him.

## B. Claim of Denied Promotion.

■ Mr. Ceasar's claims being denied a promotion to the position of Interim Director of Student Aid Accounting. In his deposition, Mr. Ceasar first said he applied for the promotion and later recanted that statement, saying that there was no appli-cation and that he simply expressed that he would be "willing to fill in, in the interim position" which management filled with another selection. He has made no claim that he was qualified for the position of Interim Director nor has he submitted any evidence which would show the Court that he was so qualified. Therefore, he fails to establish a *prima facie* case in this claim.

Even if he did establish a *prima facie* case, by affidavit Lamar University has stated it selected John Nguyen, an Asian–American, as the Interim Director because of his prior experience with Lamar University and its Port Arthur branch, his grasp of the Financial Records Information System, and his excellent references. Further, Mr. Ceasar had not been recommended by his supervisor because of his performance. Therefore, according to the University, its selection was based on the non-discriminatory basis of Mr. Nguyen's greater experience and Mr. Ceasar's performance record. The Court finds that sufficient to eliminate the University's burden of production. Mr. Ceasar has submitted nothing to show discriminatory pretext.

■ Mr. Ceasar's second claim for a denied promotion is for the permanent position of Director of Student Financial Aid Accounting. Again, Mr. Ceasar has not claimed nor shown himself to have been qualified for the position. The permanent position was ultimately filled by Mr. Gene Moye, who is African–American. While not outcome determinative, the fact that the individual selected for the position is of the same protected race as the plaintiff is certainly material to the question of discriminatory intent. *See Nieto*, 108 F.3d at 624. With these facts in mind, it is very difficult to see that Mr. Ceasar has made out a *prima facie* case in this claim either.

Regardless, Lamar University's affidavit, supported by Mr. Ceasar's deposition

testimony, shows that Mr. Moye was previously employed as Director of Student Aid Accounting, had transferred to another position, and requested to return to his former job. The University selected him for that position based on his experience and satisfactory employment record. Further, the University noted that Mr. Ceasar's employment record included two warnings for insubordination and unprofessional conduct, making him unqualified for the position.

On these bases, Lamar University has satisfactorily shown its action was for non-discriminatory business reasons. Mr. Ceasar has submitted nothing to show discriminatory pretext.

## C. Claim of Denied Training.

■ Mr. Ceasar claims he was denied the opportunity to attend training for electronic funds transfer, in Austin, Texas, on two occasions. Lamar University agrees. On the first occasion in October 1997, Mr. John Nguyen was selected to attend instead of Mr. Ceasar. Mr. Nguyen, as noted *supra*, is Asian–American. Mr. Ceasar was subsequently slated to attend the training session in contemplated by Title VII. Specifically, Lamar argues that denial of a training opportunity is not contemplated by Title VII, citing *Shackelford v. Deloitte & Touche, L.L.P.,* 190 F.3d 398, 406 (5th Cir.1999). In that case, there was no reasonable basis on which to conclude that a denial of such training, peripheral to the plaintiff's main duties as a tax processor, would "tend to" result in a change of employment status, benefits or responsibilities. Therefore, denial of such training was not an adverse employment action covered by Title VII. *Id.* Here, Mr. Ceasar has made no claim that the electronics funds transfer training would have any effect at all on his employment status, benefits or responsibilities. In deposition,

he stated he "just wanted to show my dedication to wanting to better myself to be prepared for the job." He also admitted he understood the University's reasons for not wanting to send him to training while in a medical leave status. On that basis, the Court agrees that denial of training which would not have led to a change in Mr. Ceasar's employment status, benefits or responsibilities is not covered under Title VII.

## D. Claim of Retaliatory Firing.

In the context of retaliation, the *McDonnell Douglas* burden-shifting analysis is similar to that of denial of benefits. To establish a *prima facie* case, a plaintiff must show (1) that he engaged in a protected activity; (2) that an adverse employment action occurred; and (3) that a causal link exists between the protected activity and the adverse action. Once such a case is established, the burden shifts to the defendant to produce a legitimate, non-discriminatory reason for the adverse decision. If the defendant produces such a reason, the burden shifts back to the plaintiff to show that the defendant's reason is pretext—that is, the offered reason is false and that prohibited retaliation was the real reason for the action. *See Sherrod v. American Airlines,* 132 F.3d 1112, 1122 (5th Cir.1998); *Long v. Eastfield College,* 88 F.3d 300, 304 (5th Cir.1996); *Martin v. Kroger Co.,* 65 F.Supp.2d 516, 559 (S.D.Tex.1999), *aff'd, Martin v. Kroger Co.,* 224 F.3d 765 (5th Cir.2000).

■ Therefore, the ultimate issue is whether the employer unlawfully retaliated against the employee for exercising a protected activity. The ultimate issue of retaliation requires the employee to prove that the adverse employment action would not have occurred "but-for" the protected activity. *See Long,* 88 F.3d at 308.

Mr. Ceasar claims he was fired in August 1998 in retaliation for having filed his EEOC complaint in May 1998. Specifically, he was terminated by Mr. Mike Ferguson (Vice President for Finance and Operations) on August 14, 1998. Without question, Mr. Ceasar participated in a protected activity when he filed his complaint. The fact that he was terminated was an adverse employment action. Therefore, the first two elements of the retaliation *prima facie* analysis are met.

However, Mr. Ceasar has adduced no evidence and makes no serious claim that Mr. Ferguson was informed of or otherwise aware of the EEOC complaint. He only stated, in deposition, that "From the circumstances, Mr. Ferguson should have known [of the EEO complaint]." That is possibly true, particularly if Mr. Ceasar communicated the fact he had made such a complaint to the University. However, he has produced nothing to prove Mr. Ferguson was aware of it. Since Mr. Ferguson was the official with termination power, and Mr. Ceasar has not shown that he was aware of the EEO complaint, Mr. Ceasar has failed to make the "but-for" causation connection between his protected activity and the adverse employment action. Therefore, he has failed to make a *prima facie* case for retaliation under Title VII.

Lamar University does provide a legitimate, non-discriminatory reason for having taken the termination action, however. In addition to Mr. Ceasar's record of insubordination and unprofessional conduct, he incurred an extended medical absence under suspicious circumstances and ultimately failed to return to work on time at the end of his medical leave.

The University provides the same summary judgment evidence discussed *supra* to show that Mr. Ceasar departed his workplace on February 28, 1998, with a doctor's diagnosis that he was suffering from gallstones but which did not indicate that Mr. Ceasar was unfit to work. On March 30, 1998, Mr. Ceasar sent his supervisor, Mr. Moye, a letter explaining that his gallbladder surgery would probably occur within the ensuing two weeks. On March 31, Mr. Moye responded by letter stating that Mr. Ceasar's compensatory time for medical leave was nearly exhausted, that he would have to use regular vacation time to be absent, and that Mr. Ceasar must provide a specifically worded statement from a doctor that he was medically unable to return to work (not simply "under doctor's care"). Two weeks later, Mr. Ceasar submitted an application for medical leave under the Family Medical Leave Act ("FMLA") from May 4 to August 4, 1998. He still had not submitted a doctor's statement that he was unable to work. The University sent him a letter on April 29, 1998, stating that his FMLA application would be held because he still had not submitted the appropriate Medical Certification Form as to his inability to work.

Mr. Ceasar finally provided a doctor's letter recommending that Mr. Ceasar not work on May 22, 1998. The letter added that Mr. Ceasar could return to work, post-surgery and recovery, on August 4, 1998, a date coinciding with Mr. Ceasar's FMLA request. On July 21, 1998, Mr. Ceasar requested his FMLA leave be extended sixty days past August 4. The request was denied because the FMLA only provides for twelve weeks leave per year. Mr. Ceasar then, on July 30, requested sixty days of leave without pay beyond his return date of "August 12," eight days later than his previously indicated return date of August 4. On August 3, Mr. Ferguson denied the request and warned Mr. Ceasar that he must return to work on August 12, 1998, at 8 a.m. or be terminated.

Mr. Ceasar did not return to work on August 4 or 12. On August 12, at noon, he did appear in the Human Resources Office to tender a work release statement from his doctor. His doctor's statement, dated August 11, was that Mr. Ceasar had not undergone surgery after all because his surgeon had retired, but that he was "released to return to work" as of that date. Mr. Ceasar failed to report to his workstation or contact his supervisor on August 12. He remained absent until August 14, when he appeared in his workplace.

Lamar University asserts, based on its summary judgment evidence, that Mr. Ceasar was terminated for failure to return from leave in accordance with the FMLA and for his continued failure to comply with its Human Resources Policy and Procedures, Policy 6.2 (procedures to control absenteeism).

Even though Mr. Ceasar has not firmly established a *prima facie* case for retaliation, Lamar University has established that its termination action was taken for non-discriminatory reasons of business and personnel management. Its actions were reasonable, given Mr. Ceasar's apparent manipulation of the medical leave system for an avowed surgery which never occurred and for his failure to return on time. Even if Mr. Ceasar's complaint were to be construed to establish a *prima facie* case, there is no genuine issue of fact remaining to suggest a retaliatory motive. Mr. Ceasar has submitted nothing to show that the University's reasons were either false nor given as a pretext for improper retaliation.

## IV. Conclusion.

Mr. Ceasar's Title VII claims do not hold water. His *prima facie* cases are at best thin and usually nonexistent. In each case, Lamar University has shown, with appropriate summary judgment evidence,

that its actions were taken reasonably and with non-discriminatory motivation, leaving no genuine issue of material fact. There is nothing in the plaintiff's pleadings to refute those actions as being a pretext for improperly motivated adverse employment actions and Mr. Ceasar has chosen not to respond to the University's motion with any statement in opposition whatsoever, either conclusory or supported by evidence. Lamar University's motion is thus properly granted.

It is, therefore,

ORDERED, that Defendant's Motion for Summary Judgment is hereby GRANTED. This action is dismissed with prejudice, each party to pay its own costs.