# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mrs. Karen M. Deter, an adult     :
individual; and Mrs. Diane Gresock,  :
an adult individual,               :
                Appellants  :
                         :
          v.            :
                         :
Borough of Sykesville, a Pennsylvania  :  No. 500 C.D. 2019
Municipality               :  Argued: February 11, 2020


BEFORE:   HONORABLE ANNE E. COVEY, Judge
            HONORABLE CHRISTINE FIZZANO CANNON, Judge
            HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                    FILED:  February 28, 2020


Karen M. Deter (Deter) and Diane Gresock (Gresock) (collectively, Appellants) appeal from the Jefferson County Common Pleas Court's (trial court) March 28, 2019 order granting the Borough of Sykesville's (Borough) Motion for Summary Judgment (Summary Judgment Motion).  Appellants present two issues for this Court's review: (1) whether the trial court erred by requiring Appellants to prove that they were similarly situated to younger employees of the opposite sex who were treated more favorably and then concluding that they failed to establish a *prima facie* discrimination case; and (2) whether the trial court erred by requiring Appellants to show that a majority of the Borough's Council was aware of Appellants' protected activity and then determining that Appellants failed to establish a *prima facie* retaliation case.

On July 7, 2017, Appellants filed a Complaint against the Borough in the trial court (Complaint).  Therein, Appellants alleged: (1) gender discrimination under

the Pennsylvania Human Relations Act (PHRA)[1] and Title VII of the Civil Rights Act of 1964 (Title VII)[2] (Counts I and IV); (2) age discrimination under the PHRA and the Age Discrimination Employment Act (ADEA)[3] (Counts II and III); and (3) retaliation under the PHRA (Count V). Appellants averred that the Borough discriminated against them based on their age and sex and for reporting incidents of sexual harassment by approving raises not commensurate with those approved for younger male employees, threatening their jobs, and otherwise creating a hostile work environment which caused them to resign.

The male Borough employees were not named in the Complaint; however, there were only six full-time employees for whom the Borough set the terms and conditions of employment: Deter, Gresock, Nick Yamrick (Yamrick), Terry Frantz (Frantz), Justin Arnold (Arnold) and Jimmy Dixon (Dixon). *See* Appellants' Br. at 3. Gresock was the Borough's secretary/treasurer and Deter was the Borough's assistant secretary/treasurer. Arnold and Dixon were laborers whose duties included plowing snow, sweeping streets, working at the sewage plant, and helping with the water facility. *See* Gresock Deposition (Depo.) at 11, Notes of Testimony (N.T.), March 5, 2018 at 38-39. Frantz was a superintendent and assistant sewage operator who supervised Dixon and Arnold. *See* Gresock Depo. at 11, N.T., March 5, 2018 at 39. Frantz also did the same laborer work as Dixon and Arnold. *See id.* Yamrick was the Borough's water commissioner. *See id.*

By way of background, the Borough is governed by a Council of seven members. On December 21, 2015, Council members Matthew Kosko (Kosko), Mack Zimmerman (Zimmerman), Thomas Kundrich (Kundrich), Ronald Park (Park), James Strouse (Strouse), and Gabriel Sweka, Jr. (Sweka) voted on the Borough employee

---

[1] Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §§ 951-963.
[2] 42 U.S.C. §§ 2000e – 2000e-17.
[3] 29 U.S.C. § 621.

wage rates for the 2016 calendar year. Appellants claim that they received lower raises than the male employees because they were female, and in retaliation for complaints they purportedly made to former Council member Linda Mahlon (Mahlon) and Kundrich about Kundrich touching their arms and backs when he periodically came to the office. Appellants alleged that these acts violated Title VII and the PHRA.

On August 28, 2017, the Borough filed an Answer and New Matter to Appellants' Complaint. On September 5, 2017, Appellants filed a Reply to New Matter. Thereafter, the parties proceeded with extensive discovery. On February 15, 2019, the Borough filed the Summary Judgment Motion. On March 18, 2019, Appellants filed an Answer thereto. On March 28, 2019, the trial court granted the Borough's Summary Judgment Motion, and judgment was entered on April 15, 2019. Appellants appealed to this Court.[4] On April 29, 2019, the trial court directed Appellants to file a Concise Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b) (Rule 1925(b) Statement). On May 20, 2019, Appellants filed their Rule 1925(b) Statement. On May 24, 2019, the trial court filed its Rule 1925(a) Opinion.

Initially,

> [s]ummary judgment is proper when, after pleadings are closed: (1) 'there is no genuine issue of any material facts as to a necessary element of the cause of action or defense'; or (2) after the completion of relevant discovery 'an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.' Rule 1035.2 of the Pennsylvania Rules

---

[4] "An order of a trial court granting summary judgment may be disturbed by an appellate court only if the court committed an error of law . . . ; thus, our standard of review is *de novo*, and our scope of review is plenary." *Desher v. Se. Pa. Transp. Auth.*, 212 A.3d 1179, 1185 n.6 (Pa. Cmwlth. 2019) (quoting *LJL Transp., Inc. v. Pilot Air Freight Corp.*, 962 A.2d 639, 647 (Pa. 2009)).

of Civil Procedure, Pa.R.C.P. No. 1035.2. When considering a motion for summary judgment, a common pleas court must examine all facts and reasonable inferences deduced therefrom in a light most favorable to the non-moving party and 'may only grant summary judgment where the right to such judgment is clear and free from all doubt.' *Summers v. Certainteed Corp*[.], . . . 997 A.2d 1152, 1159 ([Pa.] 2010) (internal quotations omitted).

*Leibensperger v. Carpenter Techs., Inc.*, 152 A.3d 1066, 1073 (Pa. Cmwlth. 2016).

Appellants first argue that the trial court erred by requiring Appellants to prove that *similarly situated* male employees were treated more favorably, and concluding that Appellants failed to establish a *prima facie* case of discrimination.[5] Appellants contend that, because their claims are not based on the Equal Pay Act,[6] but, rather, Title VII and the PHRA, a *prima facie* showing of this element is not required. Appellants cite *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to support their position. The Borough rejoins that the trial court properly relied upon *Summy-Long v. Pennsylvania State University*, 226 F. Supp. 3d 371 (M.D. Pa. 2016), *aff'd*, 715 F. App'x 179 (3d Cir. 2017), which expressly requires a *prima facie* showing that "similarly situated employees of the opposite sex were treated more favorably[,]" to establish a "case of pay discrimination based upon sex under Title VII." *Id.* at 395.

At the outset,

> [t]he analytical model established by the [United States (] U.S.[)] Supreme Court in *McDonnell Douglas* . . . , provides the burdens of proof that each party bears in an employment discrimination case. Briefly, the complainant bears the burden of establishing a *prima facie* case by showing that: (i) [s]he is in a protected class; (ii) [s]he is qualified for the position; (iii) [s]he suffered an adverse

---

[5] Appellants did not address the issue of age discrimination in their brief to this Court. *See* Appellants' Br. at 3 n.1.

[6] 29 U.S.C. § 206(d)(1).

4

employment action; and (iv) [s]he was discharged under circumstances **that gave rise to an inference of discrimination**. Once the complainant makes this initial case, the burden then shifts to the employer to articulate some legitimate, non-discriminatory motive for its action. If the employer does so, the complainant is then given the opportunity to demonstrate that the proffered reasons were pretextual. *Id.* at 802[.]

*Spanish Council of York, Inc. v. Pa. Human Relations Comm'n*, 879 A.2d 391, 397 (Pa. Cmwlth. 2005) (emphasis added).

The U.S. District Court for the Western District of Pennsylvania, in *Knox v. PPG Industries, Inc.* (W.D. Pa. No. 15-1434, filed March 15, 2018), held:

> **To establish a *prima facie* case of pay discrimination under Title VII**, **a plaintiff must show** that she was: (1) a member of a protected class; (2) qualified for the position[;] (3) suffered an adverse employment action; and (4) **similarly situated non-protected employees**, i.e. 'comparators,' **were treated more favorably**. *Ezold v. Wolf, Block, Schorr* [&] *Solis-Cohen*, 983 F.2d 509, 522 (3d Cir. 1993); *Summy-Long* . . . (citing *Johnson v. McGraw-Hill Co*[*s.*], 451 F. Supp. 2d 681, 691 (W.D. Pa. 2006)). 'While 'similarly situated' does not mean identically situated, the plaintiff must nevertheless be similar in all relevant respects.' *Opsatnik v. Norfolk S*[.] *Corp*., 335 F[.] App[']x[] 220, 222-23 (3d Cir. 2009) (internal citations and quotation marks omitted). **To meet this initial burden, a plaintiff must demonstrate that she was 'performing work substantially equal to that of the** [male] **employees who were compensated at higher rates' than she was**. *Summy-Long*, 226 F. Supp. 3d at 395 (quoting *Aman v. Cort Furniture Rental Corp*., 85 F.3d 1074, 1087 (3d Cir. 1996)).

*Knox*, slip op. at 6-7 (emphasis added).

> The 'precise elements of a plaintiff's *prima facie* case may vary with the particular circumstances.' *Waldron v. SL Indus.*, 56 F.3d 491, 494 n.3 (3d Cir. 1995). Accordingly, a plaintiff can satisfy the fourth element of a *prima facie* case in a variety of ways. An inference of racial discrimination may arise when 'similarly situated persons who are not members of a protected class [a]re treated more favorably.'

5

> *Kimble v. Morgan Props.,* 241 F[.] App[']x[] 895, 898 (3d
> Cir. 2007). Similarly[]situated employees are those who
> 'have dealt with the same supervisor, have been subject to
> the same standards and have engaged in the same conduct
> without such differentiating or mitigating circumstances
> that would distinguish their conduct or the employer's
> treatment of them for it.' *Ogden v. Keystone Residence,*
> 226 F. Supp. 2d 588, 603 (M.D. Pa. 2002); *see Red v.*
> *Potter,* 211 F[.] App[']x[] 82, 84 (3d Cir. 2006) (stating that
> 'in order to show that an employee is 'similarly situated,''
> all of the relevant aspects of employment need to be nearly
> identical') (internal citation omitted).

*Johnson v. Fed. Express Corp.*, 996 F. Supp. 2d 302, 317-18 (M.D. Pa. 2014), *aff'd*,

604 F. App'x 183 (3d Cir. 2015).

Here, the trial court concluded that Appellants "failed to establish a

*prima facie* showing that they were similarly situated to the male employees[,]"

opining:

> [Appellants] invite the [trial c]ourt to interpret the 'similarly
> situated' requirement to include all Borough employees.
> Although perfect parity is not necessary, the Third Circuit
> has expressly rejected such an expansive interpretation.
> E.g., *Monaco v. Am. Gen. Assur., Co*., 359 F.3d 296 (3[]d
> Cir. 2004), *Peake v. Pa. State Police*, 644 F[.] App[']x[]
> 148 (3[]d Cir. 2016).

> Meanwhile, the [C]ourt in *Nagle v. RMA, the Risk*
> *Management Ass['n]*, 513 F. Supp. [2]d 383 ([] E.D. [Pa.]
> 2007), clarified that different positions with different
> requirements, even if superficially comparable, did not
> satisfy the 'similarly situated' requirement necessary to
> establish wage discrimination. *Id.* at 389. Referencing
> decisions from other federal jurisdictions, it said that
> another employee was only similarly situated if his job
> required the same skill, effort, and responsibility as that
> performed by the plaintiff and was performed under similar
> conditions. *Id.* That was certainly not the case here.

> Each of the Borough's male employees, both younger and
> older, performed duties that required entirely different
> training and skill sets than those utilized by the [Appellants]

6

as secretary/treasurer and assistant secretary/treasurer. Ranging from general laborer to supervisor of roads and water operator, the male employees were out in the field. They were keeping the lawn mowed, testing the water and sewage, sweeping the streets, repairing water line breaks, etc. Some more skilled than others, they were all performing 'blue collar,' labor-type tasks inherent to the operation of a borough. [] [Appellants'] duties, on the other hand, were strictly administrative. They generated water and sewage bills, received and processed payments, maintained files, provided information to council members and the public, and performed a variety of other secretarial duties. All were important and necessary to the efficient operation of a municipal corporation, and by all accounts, [] [Appellants] knew their jobs and did them well. Nonetheless, the tasks they undertook were wholly distinct from those undertaken by the male employees, which means they cannot establish a claim for gender-based wage discrimination by referencing the disparity between their raises and those approved for [] Arnold, [] Frantz, [] Yamrick, and [] Dixon. As the [C]ourt said in *Nagle*, 'A plaintiff's discrimination claim 'fails where she compares [her] treatment to another employee but cannot show that the other employee was similarly situated.'' *Id* (quoting *Caesar v. Lamar Univ.*, 147 F. Supp. 2d 547, 552 (E.D. Tex. 2001)). Because that is what [Appellants] have done in this case, therefore, they have failed to establish a *prima facie* case on these claims.

Appellants' Br. App. A at 3-4 (record citation omitted). This Court discerns no error in the trial court's rationale or legal conclusion. Accordingly, the trial court did not err by requiring Appellants to prove that *similarly situated* male employees were treated more favorably, and concluding that Appellants failed to establish a *prima facie* case of discrimination.

Appellants next argue that the trial court erred by requiring Appellants to show that a majority of the Borough's Council was aware of Appellants' protected activity, i.e., Appellants' complaint (to Mahlon and Kundrich himself), that Kundrich was touching their backs and arms, and determining that Appellants failed to establish a *prima facie* case of retaliation. Appellants contend that, because Kundrich

was a Council member and a member of the personnel committee, he had significant influence and/or participated in the adverse employment actions decision, i.e., lower raises, change in job titles and hostile work environment. The Borough rejoins that, although Mahlon testified that she told one of the Council members about Kundrich's touching, there is no evidence that one vote was influenced by her statement or that this Council member influenced other Council members. Further, the Borough maintains that Appellants' complaint to Mahlon occurred five months before the vote on the raises and there is no evidence of any negative animus by Kundrich or any other Council member.

Initially,

> [a] *prima facie* case of retaliation requires a complainant to show that: (i) she was engaged in a protected activity; (ii) her employer was aware of the protected activity; (iii) subsequent to participation in the protected activity complainant was subjected to an adverse employment action; and (iv) there is a causal connection between participation in the protected activity and the adverse employment action. Upon showing a *prima facie* case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its action. *See McDonnell Douglas*[.] [] Finally, the burden shifts to the complainant to show that the respondent's proffered reasons are pretextual. *Id.*

*Spanish Council*, 879 A.2d at 399 (citation omitted).

Appellants contend that the protected activity consisted of: (1) telling Council member Mahlon in July 2015 that Kundrich was touching their arms and backs; and (2) telling Kundrich to refrain from touching their arms and backs. Appellants assert that the Borough was aware that Appellants complained because Kundrich and Mahlon were Council members and Mahlon allegedly told other Council members. Thereafter, Appellants received lower raises, their employment positions changed and their positions were eliminated. Because Kundrich was a

Council member and a member of the personnel committee, Appellants maintain there was a causal connection between their complaints and the adverse employment actions.

> To obtain summary judgment, the employer must show that the trier of fact could not conclude, as a matter of law, (1) that retaliatory animus played a role in the employer's decision[-]making process and (2) that it had a determinative effect on the outcome of that process. This may be accomplished by establishing the plaintiff's inability to raise a genuine issue of material fact as to either: (1) one or more elements of the plaintiff's *prima facie* case or, (2) if the employer offers a legitimate non-retaliatory reason for the adverse employment action, whether the employer's proffered explanation was a pretext for retaliation.

*Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 501 (3d Cir. 1997) (italics added) (citation omitted).

Here, the trial court determined that Appellants did not make a *prima facie* showing that the Borough was aware of the protected activity, expounding:

> In this case, [Appellants] allege that the adverse action was three-fold: first, that they received lesser pay raises than other employees; second, that the Borough changed their employment positions; and third, that it moved to eliminate their positions. Because [Appellants] have failed to establish that the Borough was aware of the protected activity - their complaints about [Kundrich] touching them - -, however, the Borough cannot be held liable under the PHRA for any of those alleged actions.
>
> Like its municipal counterparts, the Borough is governed by a multi-member council, and only by a majority vote can compensation be altered or job positions be changed or added. Because Council consisted of six members during the relevant timeframe, therefore, [**Appellants**] **needed to establish that at least four of them knew about their complaints against Kundrich during the relevant timeframe**. They did not.

9

As [Appellants] testified, July 30, 2015 was the first and only time that year they spoke to a Council member [Mahlon] -- about Kundrich touching them, and neither could say whether Mahlon had discussed the matter with other members of Council.

**Mahlon, though, remembered telling Mark Matusky** [(Matusky)], **whom she recalled was Council president at the time, and thought she had also mentioned it to []  Kosko.  She further remembered bringing it to the attention of the entire Council at an executive session and being told that it would be handled by the president**. With regard to [] Matusky and Council as a whole, however, the record shows that she was mistaken.

Mahlon learned of [Appellants'] allegations on July 30, 2015 and resigned before the next Council meeting. Accordingly, she did not attend any meetings after July 20, 2015, and thus could not have apprised Council of a complaint she did not receive until 10 days after the last meeting she attended.  While Mahlon may have shared [Appellants'] concerns with [] Matusky, moreover, the proffered meeting minutes, which [Appellants] transcribed reflect that he was not a member of Council in July or August of 2015.  In the subject [Summary Judgment] Motion and [Answer], moreover, the parties agree that Kundrich was appointed to replace Matusky.  The record plainly demonstrates, therefore, that Mahlon *could not have* reported Kundrich's alleged conduct to the full Council during an executive session and that [] Matusky was *former* Council member as of July 30, 2015.

At best, then, [**Appellants**] **have established that one Council member other than Mahlon knew about their complaint**.  **They were not personally aware whether anyone else knew, and among those who were asked during depositions, every Council member testified that he or she only learned about the Kundrich matter in February of 2016**.  [**Appellants**] **offered no evidence to support a contrary conclusion, and because the inferences to which they may be entitled must be reasonable extrapolations from the actual evidence, that means they are not entitled to a contrary inference**.  That being the case, and whereas the Borough could not determine raises, change [Appellants'] terms of

10

employment, or eliminate their positions without the consent of four Council members, they have failed to establish that the Borough was aware of their complaints about Kundrich when it took the allegedly adverse actions against them.

Appellants' Br. App. A at 4-5 (bold emphasis added) (record citations and footnotes omitted).

The trial court disregarded Mahlon's testimony because the record contained contradictory evidence and because Council members testified during their depositions that they did not know about the Kundrich complaint until after February 2016.[7]  However, "[i]t is well established that the credibility of testimony is a matter for the fact-finder and cannot be resolved at the summary judgment stage.  *Dep*[*'t*] *of Transp*[.] *v. UTP Corp.,* 847 A.2d 801, 806 (Pa. Cmwlth. 2004); *see also Nanty-Glo Borough v. Am*[.] *Surety Co.,* 163 A. 523, 524 (Pa. 1932))."  *Blesse v. Borough of Coaldale* (Pa. Cmwlth. No. 1448 C.D. 2015, filed May 2, 2016), slip op. at 14.[8]

Specifically,

[i]n determining the existence or non-existence of a genuine issue of a material fact, courts are bound to adhere to the rule of [*Nanty-Glo*] which holds that **a court may not summarily enter a judgment where the evidence depends upon oral testimony.**

However clear and indisputable may be the proof when it depends on oral testimony, it is nevertheless the province of the [fact-finder] to decide, under instructions from the court, as to the law applicable to the facts, and subject to the salutary power of the court to award a new trial if [it] should deem the verdict contrary to the weight of the evidence.

---

[7] Deter complained to Council member Mary Pamela Reiter on February 4, 2016, after which both Appellants were officially interviewed regarding said complaint.

[8] Pursuant to Section 414(a) of the Commonwealth Court Internal Operating Procedures, unreported opinions of a panel of the Commonwealth Court issued after January 15, 2008 may be cited for persuasive value, but not as binding precedent.  210 Pa. Code § 69.414(a).

> *Penn* [*Ctr.*] *House, In*[*c*]. *v. Hoffman*, . . . 553 A.2d 900, 902-03 ([Pa.] 1989). The *Nanty-Glo* rule means '**the party moving for summary judgment may not rely solely upon its own** testimonial affidavits or **depositions, or those of its witnesses**, to establish the non-existence of genuine issues of material fact.' *Dudley* [*v. USX Corp.*, 606 A.2d 916,] 918 [(Pa. Super. 1992)] . . . . '**Testimonial affidavits of the moving party or his witnesses,** not documentary, **even if uncontradicted, will not afford sufficient basis for the entry of summary judgment**, since the credibility of the testimony is still a matter for the [factfinder].' *Penn* [*Ctr.*] *House*, . . . 553 A.2d at 903.

*DeArmitt v. N.Y. Life Ins. Co.*, 73 A.3d 578, 595 (Pa. Super. 2013) (emphasis added).

Moreover, although the Borough issued the subject pay raises in December 2015, the other allegedly adverse actions, i.e., the changes in Appellants' positions and hostile work environment, continued through March 7, 2016, when Appellants resigned. Thus, this Court cannot agree with the trial court that it can disregard Mahlon's testimony. Viewing her testimony "and reasonable inferences deduced therefrom in a light most favorable to the non-moving party," as we must, this Court is constrained to conclude that there is a genuine issue of fact as to whether the Borough was aware of Appellants' complaint to Mahlon about Kundrich and whether Mahlon reported the same to other Council members. *Leibensperger*, 152 A.3d at 1073.

Because the trial court improperly granted the Summary Judgment Motion on the basis of this element of Appellants' *prima facie* case, the matter is remanded to the trial court to consider whether Appellants failed to "raise a genuine issue of material fact as to either: (1) one or more [other] elements of [Appellants'] *prima facie* case or, (2) if the [Borough] offer[ed] a legitimate non-retaliatory reason for the alleged adverse employment action, whether the employer's proffered explanation was a pretext for retaliation." *Krouse*, 126 F.3d at 501.

For all of the above reasons, the trial court's order is affirmed in part and reversed in part, and the matter is remanded to the trial court for consideration of Appellants' retaliation claim.

_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mrs. Karen M. Deter, an adult : 
individual; and Mrs. Diane Gresock, : 
an adult individual, : 
                  Appellants : 
                        : 
          v. : 
                        : 
Borough of Sykesville, a Pennsylvania :   No. 500 C.D. 2019
Municipality : 

## O R D E R

AND NOW, this 28th day of February, 2020, the Jefferson County Common Pleas Court's (trial court) March 28, 2019 order granting the Borough of Sykesville's Motion for Summary Judgment is AFFIRMED as to Karen M. Deter's and Diane Gresock's (collectively, Appellants) discrimination claim and REVERSED as to Appellants' retaliation claim. The matter is REMANDED to the trial court for further consideration consistent with this opinion.

Jurisdiction is relinquished.

_____
ANNE E. COVEY, Judge