Annie F. HARRIS,

v.

**STATE FARM FIRE & CASUALTY CO.**

No. 99–2291.

United States District Court, W.D. Louisiana, Monroe Division.

Sept. 13, 2001.

Charles L. Kincade, Dianne L. Hill, Monroe, LA, Carlton L. Parhms, Langston Firm, Monroe, LA, Patrice Benn–Abbey, Algiers Law Center, New Orleans, LA, for plaintiff.

Mark N. Mallery, McGlinchey, Stafford, et al., New Orleans, LA, Stephanie G. John, McGlinchey, Stafford, et al., Houston, TX, Deirdre C. McGlinchey, McGlinchey, Stafford, et al., Monroe, LA, for defendants.

## RULING

JAMES, District Judge.

This is an employment discrimination action brought by Plaintiff Annie F. Harris ("Harris") against Defendant State Farm Life Insurance Company ("State Farm") pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*; 42 U.S.C. § 1981; and state law. Harris alleges that State Farm discriminated against her on the basis of race and age by denying her promotions and opportunities and by treating her in a discriminatory manner. Harris also alleges that she was battered by one of her supervisors.

On May 11, 2001, State Farm filed a motion for summary judgment. State Farm contends that there are no genuine issues of fact for trial and that it is entitled to judgment as a matter of law on all of Harris's claims. On June 29, 2001, Harris filed a memorandum in opposition to State Farm's motion for summary judgment. On July 6, 2001, State Farm filed a motion to strike or exclude certain exhibits attached to Harris's opposition.

For the following reasons, "Defendant State Farm Life Insurance Company's Motion for Summary Judgment" [Doc. # 49] is GRANTED IN PART, and "Defendant State Farm Life Insurance Company's Motion, with Incorporated Memorandum in Support, to Strike or Exclude *In Limine* Certain Exhibits to Plaintiff's Opposition to Defendant's Motion for Summary Judgment" [Doc. No. 84] is DENIED.

## FACTS

Harris, an African–American, born on January 21, 1947, began working for State Farm in 1972 at the Regional Office in Monroe, Louisiana. Although the majority of Harris's work has been in the area of the company that services life insurance policies, she has also worked for a substantial time in the death claims area.

Throughout her employment at State Farm, Harris has worked in clerical positions. She was initially classified as a C–2 or clerical, grade 2. In 1974, Harris was promoted to the C–3 classification. In 1976, Harris was promoted to the C–4 classification, and in 1980, she was promoted to the C–5 classification. Finally, in 1989, Harris was promoted to the C–6 classification. In the 1990s, the "C" series of classifications were re-designated as

"SF" classifications. Thus, Harris currently is classified as an SF–6.

When Harris was hired by State Farm in 1972, she did not have a college degree. Although Harris attended classes at Northeast Louisiana University (now the University of Louisiana at Monroe), during 1980, 1981, and 1982, she has not received a degree.

State Farm encourages its employees to participate in self-study courses and self-improvement programs. For example, State Farm, in cooperation with the Life Office Management Association ("LOMA"), offers a ten module self-study course leading to the Fellowship of Life Management Associates ("FLMI") designation.

Harris was told by her supervisors that an FLMI designation would be helpful to her career, and she began the course work necessary to obtain this designation. However, Harris completed only two of the ten required courses and has not enrolled in any further courses since the 1970s. Harris also participated in self-improvement programs, including Toastmasters.

Throughout her employment at State Farm, Harris' supervisors have counseled her concerning problems with her work performance and her conduct at work.

In December of 1995, Karen Cerniglia ("Cerniglia"), Harris' supervisor in the death claims area, met with her regarding various errors in her work, as well as her failure to follow corporate procedures in handling claims. In a memo dated December 13, 1995, Cerniglia explained to Harris that her performance was unacceptable. Cerniglia wrote:

> You have been handling death claims for a number of years and are capable of doing excellent work.... Also, your workload has not been excessive for the past few months. For these reasons, I

am perplexed at the seriousness and frequency of these errors.

> We expect immediate and sustained improvement. All of us want you to succeed and do the job you are obviously capable of doing. As your supervisor, I personally am available and willing to help in any way that I can.

> To monitor your performance and encourage improvement, monthly follow-ups will be conducted.

On December 15, 1995, Harris responded: "I Annie Faye Harris wants [sic] to be taken off Death Claims immediatly [sic] because I am not perfect and I don't agree with these erros [sic]. Some are not errors."

Harris nevertheless remained in the death claims area, and Cerniglia's counseling continued for several months.

In 1996, Harris made a complaint of race discrimination to the Louisiana Commission on Human Rights ("LCHR") based on Cerniglia's alleged mistreatment of her during the counseling process, and on the promotion of another employee in 1996. State Farm was never notified of the complaint.

On October 29, 1996, Cerniglia documented additional mistakes and explained to Harris, "you are not performing consistently with what is expected of an Operations Specialist at your experience level." Harris was advised, in writing, that without sustained improvement, she might be demoted or discharged. Harris was subsequently rated "needs improvement" in her 1996 performance evaluation.

On October 31, 1996, Harris's mental health counselor submitted a letter to State Farm requesting that Harris be moved to a less stressful position. State Farm granted this request and transferred Harris to a less demanding position and allowed her to remain in her C–6 (or SF–6)

classification. Following this transfer, Harris voluntarily withdrew her LCHR complaint.

Although Harris cannot remember applying for any promotions at State Farm prior to 1995, she alleges that throughout her twenty-nine years of employment with State Farm, she has been systematically denied promotions and opportunities and that she has been treated in a racially discriminatory manner. According to Harris, since 1982 she has trained more than twenty younger, white employees, all of whom have been promoted.

Supervisors at State Farm have repeatedly told Harris that she has not been promoted beyond the C–6 (or SF–6) classification because she does not have a college degree or major insurance designation. Harris has also been told that she is not as qualified as other candidates who have been promoted. Harris denies that she is less qualified, and claims that although she does not possess an FLMI designation, she has been involved in other self-improvement programs in hope of advancing at State Farm.

State Farm informs all employees of promotional opportunities through an internal job posting process. Interested employees must submit requests in a designated form in order to be considered for vacant positions announced through this system. A request submitted by a State Farm employee is reviewed by the employee's supervisor. The supervisor may comment on the employee's request and make an overall recommendation as to whether she thinks the employee is a viable candidate for the vacancy. The supervisor's comments are forwarded to the employee's superintendent and unit manager for further comment. All comments are then forwarded to the individual or individuals making the hiring decision. According to State Farm's written policy, "Key factors in considering candidates for promotional opportunities are successful performance in the present job, capacity and readiness for additional responsibility, and attendance."

In October of 1998, Harris applied for a vacant Life Health Trainee position. This position is considered a management position. Wendy Harrison ("Harrison"), an African–American, was later selected for this position. At the time Harrison was selected, she had a college degree and a nursing background.

In March of 1999, two SF–7 positions became vacant. Harris did not apply for these positions, which were filled by Debbie Martin ("Martin") and Vicki Lane ("Lane"). At the time of her promotion to SF–7, Martin had an FLMI designation.

On June 11, 1999, Harris filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging race and age discrimination because of State Farm's failure to promote her to the Life Health Trainee position in October of 1998, and the SF–7 positions in March of 1999.

On September 17, 1999, the EEOC mailed Harris a Dismissal and Notice of Rights letter. On December 16, 1999, Harris filed a timely complaint in this Court seeking relief pursuant to Title VII, the ADEA, and § 1981.

On September 21, 2000, Harris filed an amended and supplemental complaint in this Court asserting a claim of battery against State Farm. Harris claims that on October 8, 1999, her supervisors learned that she had a small tape recorder in her possession during a department meeting. Immediately following the meeting, Sherri Wheelus ("Wheelus"), one of Harris' supervisors, sought to question Harris about the recorder. According to Harris, Wheelus grabbed her by the arm in an angry

and hostile manner and pulled her into an office. Harris claims that she was not taping the meeting, and that she suffered humiliation, embarrassment, and undue emotional distress as a result of her treatment by Wheelus.

## LAW AND ANALYSIS

### I. State Farm's Motion to Strike or Exclude *In Limine* Harris's Exhibits to her Memorandum in Opposition to Summary Judgment

Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, State Farm requests that this Court strike Exhibits 1 through 19 attached to Harris's memorandum in opposition to summary judgment. Alternatively, State Farm moves that this Court exclude *in limine* the information contained in Exhibits 1 through 19.

Exhibits 1 through 19 are Skills Inventory/Spread Charts and Education and Training Records of nineteen white State Farm employees whom Harris alleges have been promoted into management positions without having college degrees or having completed FLMI designations at the time of their promotions. Harris introduced these records to rebut State Farm's proffered reasons as to why Harris has not been promoted into management positions.

State Farm argues that Exhibits 1 through 19 are not accompanied by an affidavit or any other form of sworn statement and are therefore not in proper form. Thus, they are not competent summary judgment evidence pursuant to Rule 56 of the Federal Rules of Civil Procedure.

State Farm also asserts that Exhibits 1 through 19 are not proper summary judgment evidence because they are irrelevant and inadmissible under Rule 402 of the Federal Rules of Evidence. State Farm claims there is no evidence that any of these nineteen employees were candidates for the disputed promotions in this case, no evidence identifying who made any of the decisions regarding the employment of these employees, and no evidence that any of these employees were similarly situated to Harris. According to State Farm, the employees in Exhibits 1, 2, 3, 4, 5, 7, and 9, were promoted to management positions prior to 1995, the first time Harris can remember applying for any promotions at State Farm. Further, the employees in Exhibits 8, 11, 12, 13, 14, 18, and 19, are employed by either State Farm Mutual Automobile Insurance Company or State Farm Fire & Casualty Company.

The Court concludes that Exhibits 1 through 19 are competent and relevant summary judgment evidence. Although Exhibits 1 through 19 are not accompanied by an affidavit or other sworn statement, there is no question that these business records were produced by State Farm in response to Harris's discovery request. Moreover, one reason repeatedly given to Harris regarding the denial of promotions has been her lack of a college degree or major insurance designation. Harris seeks to introduce these exhibits in order to attack the credibility of State Farm's proffered reasons. The fact that some of the employees were promoted many years prior to the positions at issue or that these employees work for another State Farm "company," are factors to be considered by the Court when evaluating the evidence. State Farm's motion to strike or exclude *in limine* Exhibits 1 through 19 is DENIED.

### II. State Farm's Motion for Summary Judgment

### A. Motions for Summary Judgment

Summary judgment is appropriate only when the pleadings, depositions, answers

to interrogatories, and admissions on file, together with any affidavits, show that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrman,* 954 F.2d 1125, 1132 (5th Cir.1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.* The moving party cannot satisfy its initial burden simply by setting forth conclusory statements that the nonmoving party has no evidence to prove its case. *Ashe v. Corley,* 992 F.2d 540, 543 (5th Cir.1993).

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.,* 19 F.3d 1017, 1023 (5th Cir.1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus., Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In evaluating the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

"In an employment discrimination case, we focus on whether a genuine issue exists as to whether the defendant intentionally discriminated against the plaintiff." *LaPierre v. Benson Nissan, Inc.,* 86 F.3d 444, 447 (5th Cir.1996). Furthermore, unsubstantiated assertions, conclusory allegations, and speculation are insufficient to satisfy the plaintiff's burden. Rather, "it is incumbent upon the nonmoving party to present evidence—not just conjecture and speculation—that the defendant ... discriminated against plaintiff on the basis of [her] race." *Grimes v. Texas Dept. Of Mental Health and Mental Retardation,* 102 F.3d 137, 140 (5th Cir. 1996). The Court must examine the direct and circumstantial evidence in order to decide whether the evidence is sufficient to support a finding that the employer used race or age as a determinative factor. *Rhodes v. Guiberson Oil Tools,* 75 F.3d 989, 993–94 (5th Cir.1996).

**B. Timeliness and Scope of Harris's Title VII and ADEA Claims**

Title VII and the ADEA require a plaintiff to file a charge of discrimination with the EEOC prior to filing suit in district court. The EEOC charge must be filed within 300 days from the date the unlawful employment practice occurred.[1] 42 U.S.C. § 2000e–5(e)(1); 29 U.S.C. § 626(d). Thus, any claims arising more than 300 days prior to the filing of the EEOC charge are time-barred.

In examining a Title VII or ADEA action, the Court's inquiry "is not ... limited to the *exact* charge [of discrimination]," but to "the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge." *Young*

---

1. Louisiana has been a deferral state since 1994, when the LCHR was funded and began operating. *See* La.Rev.Stat. Ann. § 51:2233. Accordingly, the prescriptive period for filing a charge with the EEOC extends to 300 days. 42 U.S.C. § 2000e–5(e)(1); 29 U.S.C. § 626(d); *Griffin v. City of Dallas,* 26 F.3d 610, 612 (5th Cir.1994).

*v. City of Houston,* 906 F.2d 177, 179 (5th Cir.1990) (citing *Sanchez v. Standard Brands,* 431 F.2d 455, 466 (5th Cir.1970)) (emphasis in original).

On June 11, 1999, Harris filed a Charge of Discrimination with the EEOC alleging race and age discrimination because of State Farm's failure to promote her to the Life Health Trainee position in October of 1998, and the SF–7 positions in March of 1999. According to Harris, race and age were the main factors involved in State Farm's denial of these promotions because "[she has] trained over twenty White employees and approximately all of them have been promoted over [her]. All of these employees have less experience, years of service (as little as two years) and qualifications but continue to receive promotions over [her]."

On December 16, 1999, Harris filed a Complaint in this case seeking relief pursuant to Title VII, the ADEA, and § 1981. In addition to the claims set forth in her EEOC charge that she was discriminatorily denied promotions to the Life Health Trainee and SF–7 positions, Harris further alleged in her Complaint that she has been systematically denied promotions and opportunities at State Farm; that she has been treated in a racially discriminatory manner, rendering her work environment unbearable since 1995; and that her complaints of mistreatment have been met with hostility and retaliation.

State Farm argues that the jurisdictional prerequisites set forth in Title VII and the ADEA were not satisfied with respect to Harris's other allegations of discrimination because these allegations were not the subject of a timely EEOC charge. State Farm further argues that Harris's claims regarding employment actions occurring before August of 1998 are time-barred.

■ This Court agrees with State Farm. Harris's EEOC charge refers only to State Farm's failure to promote her to the Life Health Trainee and SF–7 positions.[2] Harris's allegations that she has been systematically denied promotions and opportunities at State Farm, that she has been treated in a racially discriminatory manner, and that her complaints of mistreatment have been met with hostility and retaliation, are not within the scope of the EEOC investigation which could reasonably have been expected to grow out of Harris's EEOC charge. These allegations, most of which are made in Harris's affidavit attached to her memorandum in opposition to summary judgment, are not so similar or related to the charges presented by Harris that they would have been the proper subject of a reasonable EEOC investigation.[3] Accordingly, these allegations are not properly before the Court and are hereby DISMISSED.

■ Moreover, Harris's EEOC charge was filed on June 11, 1999. Thus, any claims regarding employment actions occurring prior to August 11, 1998, are time-barred and are hereby DISMISSED.

## C. Title VII

This Court's Title VII analysis is limited to Harris's claims that she was discrimi-

---

2. Although Harris filed a complaint of race discrimination with the LHRC in 1996, she voluntarily withdrew this complaint following her transfer to a less demanding position. Harris did not file suit in district court and did not otherwise incorporate those claims in her 1999 EEOC charge.

3. Harris has offered no evidence that the scope of the EEOC's investigation went beyond the three stated promotions. Although an argument could be made that any other instances of State Farm's failure to promote Harris occurring after August 11, 1998, could reasonably fall within the scope of the EEOC's investigation, Harris has failed to identify any such instances.

nated against because of her race when she was denied promotions to the position of Life Health Trainee in October of 1998, and to the SF–7 positions in March of 1999.

■ Title VII prohibits an employer from discriminating against an employee with respect to "compensation, terms, conditions or privileges of employment" because of race. 42 U.S.C. § 2000e–2 (a)(1). Terms and conditions of employment include the opportunity to obtain promotions. *See Munoz v. Orr,* 200 F.3d 291, 299 (5th Cir.2000).

■ When there is no direct evidence of race discrimination, as in this case, the Court applies the burden shifting test established by *McDonnell Douglas v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this test, if Harris establishes a *prima facie* case of discrimination, the burden shifts to State Farm to articulate a legitimate, non-discriminatory reason for the adverse action against Harris. *Id.* If State Farm satisfies this burden, the burden shifts back to Harris, who must prove that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Reeves v. Sanderson Plumbing Prods.,* 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (citations omitted). Harris can establish pretext either directly, by showing a discriminatory reason motivated State Farm, or indirectly, by showing that the reasons given for State Farm's actions are simply not believable. *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). In either respect, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves,* 530 U.S. at 143, 120

S.Ct. 2097 (citing *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089).

Harris claims that she was discriminated against because of her race when she was denied promotions to the position of Life Health Trainee in October of 1998, and to the SF–7 positions in March of 1999. State Farm denies these allegations, and asserts that as a matter of law, Harris cannot establish a *prima facie* case of discrimination. Alternatively, State Farm argues that even if Harris were to establish a *prima facie* case of discrimination, she cannot rebut State Farm's legitimate, nondiscriminatory reasons for failing to promote her. Harris argues that State Farm's proffered reasons are pretextual and false.

### 1. Life Health Trainee Position—October of 1998

#### a. *Prima Facie* Case

■ To establish her *prima facie* case, Harris must show that (1) she is a member of a protected class; (2) she applied and was qualified for the position; (3) she was not promoted; and (4) either (i) the position was filled by someone not in the protected class, or (ii) she was not promoted because of her race. *Pratt v. City of Houston,* 247 F.3d 601, 606 n. 2 (5th Cir. 2001).

It is undisputed that the first, second, and third elements are met: Harris is African–American, and, thus, a member of a protected class; Harris applied and was qualified for the Life Health Trainee position; and Harris was not promoted to this position in October of 1998.

■ State Farm argues that Harris cannot establish the fourth element because the October 1998 Life Health Trainee position was filled by Harrison, an African–American. However, the law provides that the fact that the position was filled by

someone in the same protected class does not preclude the establishment of a *prima facie* case of discrimination. *See Ceasar v. Lamar University*, 147 F.Supp.2d 547, 553 (E.D.Tex.2001); *Walker v. Uncle Bens, Inc.*, No. Civ. A. 4:97CV65–D–B, 1998 WL 173228, at *7 (N.D.Miss. Mar.30, 1998). "While not outcome determinative, the fact that the individual selected for the position is of the same protected race as the plaintiff is certainly material to the question of discriminatory intent." *Ceasar*, 147 F.Supp.2d at 553 (citing *Nieto v. L & H Packing Co.*, 108 F.3d 621, 624 (5th Cir. 1997)). Harris can still establish a *prima facie* case by offering evidence, other than her subjective belief, that race was a motivating factor in State Farm's failure to promote her to the Life Health Trainee position.

In support of her argument that State Farm did not promote her because of her race, Harris alleges that since 1982, she has trained more than twenty white employees, all of whom have been promoted to higher positions. According to Harris, all twenty of these employees are less experienced, less qualified, and have fewer years of service than she. However, Harris neither states who the twenty white employees are, nor does she produce any evidence demonstrating that these employees were similarly situated to her.

In further support of her argument, Harris contends that State Farm denied her promotions because she lacked a college degree or an FLMI designation while promoting nineteen white employees without degrees or designations to management positions. Harris submits Exhibits 1 through 19 in support of this assertion.

State Farm contends that Exhibits 1 through 19 are irrelevant because Harris has produced no evidence demonstrating that these employees were similarly situated to her or that the same decision makers were involved in the promotion of these employees. According to State Farm, the employees in Exhibits 8, 11, 12, 13, 14, 18, and 19, are employed by either State Farm Mutual Automobile Insurance Company or State Farm Fire & Casualty Company. Further, the employees in Exhibits 1, 3, 4, 5, 6, 9, 11, 15, and 17, had major insurance designations at the time of their promotions to management level positions.

█ The Court finds that Exhibits 1 through 19 do not establish that Harris was not promoted because of her race. The record is devoid of any evidence regarding the qualifications of the other applicants for the positions awarded to the nineteen employees described in Exhibits 1 through 19. There is similarly no evidence regarding other factors, other than educational background, which may have been relevant to State Farm's decision to promote these employees. In fact, many of these employees either had other major insurance designations or were actively pursuing them at the time of their promotions.

In sum, the position in question was filled by someone in the protected class and there is no competent summary judgment evidence to support a finding that Harris was not promoted because of her race. Accordingly, Harris has failed to establish a *prima facie* case of discrimination.

### b. Legitimate Non–Discriminatory Reasons

█ Alternatively, even if this Court were to find that Harris has met her initial *prima facie* burden, State Farm has provided legitimate, non-discriminatory reasons for failing to promote Harris to the Life Health Trainee position.

State Farm advances several reasons for its failure to promote Harris in October of

1998. First, State Farm contends that Harris was not promoted because her qualifications were not competitive with the other applicants for the position. Cerniglia and Gary Glenn ("Glenn"), the Health Claims superintendent responsible for filling the vacancy, both state by affidavit that Harris was less qualified than other applicants. Harrison, an African–American and the person selected for the position, had a college degree and a nursing background. In contrast, Harris did not have a college degree or a major insurance designation.

State Farm also asserts that Harris was not promoted because she did not receive an unqualified recommendation from her management. The affidavits of Cerniglia and Glenn both cite this lack of recommendation as a factor in the promotion decision. Although Cerniglia recommended Harris for the position, the recommendation was qualified with Cerniglia's concerns that Harris may not be as competitive as other candidates because of her lack of a college degree or major insurance designation. Further, Marla James, Harris' superintendent, did not recommend Harris based on her history of performance problems in the Life/Health claims area, including being counseled for poor performance, and being given a rating of "needs improvement" in 1996.

#### c. Pretext

In light of State Farm's legitimate, non-discriminatory reasons for failing to promote Harris in October of 1998, Harris must provide evidence sufficient to raise a genuine issue of material fact as to whether these proffered reasons are merely pretext for discrimination.

■ In *Reeves,* the Supreme Court found that a plaintiff need not always introduce additional, independent evidence of discrimination in order to survive a de-

fendant's motion for summary judgment. A court may "infer the ultimate fact of discrimination from the falsity of the employer's explanation ... (particularly if disbelief is accompanied by a suspicion of mendacity)." 530 U.S. at 147, 120 S.Ct. 2097 (citation and internal punctuation omitted). Thus, Harris could survive summary judgment if her *prima facie* case "combined with sufficient evidence for [this Court] to find that [State Farm's] asserted justification is false." *Id.*

■ Harris argues that State Farm's actual promotion practices contradict its conclusory and vague explanation of which factors favor advancement at State Farm. In support of this assertion, Harris submits Exhibits 1 through 19. According to Harris, these records demonstrate that State Farm's proffered reasons for failing to promote her are false because nineteen white employees were promoted into management positions without having college degrees or completing FLMI designations at the time of their promotions.

This Court concludes that Harris has failed to raise a genuine issue of material fact that State Farm's proffered reasons are false or pretextual, or that race was a motivating factor in State Farm's failure to promote her to the Life Health Trainee position.

First, Exhibits 1 through 19 are not sufficient to defeat summary judgment. The record is devoid of any evidence regarding the qualifications of the other applicants for the positions awarded to the nineteen employees described in these exhibits. There is similarly no evidence regarding other factors, other than educational background, which may have been relevant to State Farm's decision to promote these employees. In fact, many of these employees either had other major insurance designations or were actively

pursuing them at the time of their promotions. In contrast, Harris had not taken an FLMI course since the 1970s.

Second, State Farm does not assert that a college degree or major insurance designation is required for advancement into management level positions. Rather, State Farm contends that these two achievements are important considerations when making promotional decisions. Thus, the fact that other employees have been promoted without either is not determinative.

 Third, there is no dispute that Harris was not as qualified as Harrison. "A genuine issue of material fact exists when evidence shows the plaintiff was 'clearly better qualified' than [other] employees who were [promoted]. However, this evidence must be more than merely subjective and speculative. To establish a fact question as to relative qualifications, a plaintiff must provide sufficiently specific reasons for his opinion; mere subjective speculation will not suffice." *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir.1996) (citations omitted). Although Harris may have worked for State Farm for a greater number of years than Harrison, the Fifth Circuit has held that "an attempt to equate years served with superior qualifications ... [is] unpersuasive." *Id.* at 42 (quotation marks omitted).

 Finally, Title VII does not protect against unfair or unwise business decisions, only against decisions motivated by unlawful animus. *Nieto,* 108 F.3d at 624. Harris's own subjective belief of discrimination, no matter how genuine, cannot serve as the basis for judicial relief. *See, e.g., Price v. Marathon Cheese Corp.,* 119 F.3d 330, 337 (5th Cir.1997); *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir.1996); *Lowery v. Univ. of Houston–Clear Lake,* 82 F.Supp.2d 689, 701 (S.D.Tex.2000).

Accordingly, Harris cannot survive summary judgment on her claim of racial discrimination in State Farm's failure to promote her to the Life Health Trainee position in October of 1998.

**2. SF–7 Positions—March of 1999**

**a. *Prima Facie* Case**

To establish her *prima facie* case, Harris must show that (1) she is a member of a protected class; (2) she applied and was qualified for the position; (3) she was not promoted; and (4) either (i) the position was filled by someone not in the protected class, or (ii) she was not promoted because of her race. *Pratt,* 247 F.3d at 606 n. 2.

It is undisputed that the first and third elements are met: Harris is African–American, and, thus, a member of a protected class; and Harris was not promoted to the SF–7 positions in March of 1999. State Farm argues that Harris cannot establish the second and fourth elements because her failure to apply for the SF–7 positions rendered her unqualified for the promotions, and because she has not proven that the persons selected for the SF–7 positions were outside of her protected class.

There is no dispute that Harris did not apply for the SF–7 promotions in March of 1999. Instead, Harris argues that formal applications were not required because the applications would have been futile given State Farm's discriminatory treatment. State Farm asserts that Harris cannot establish that she would have applied for the March 1999 promotions *but for* their alleged discrimination.

 "The prima facie case is a flexible standard that may be modified to relate to different factual situations. Accordingly, courts have excused an employee's failure to apply for a position in a

variety of situations." *Dupont–Lauren v. Schneider (USA) Inc.,* 994 F.Supp. 802, 818 (S.D.Tex.1998) (citations omitted). For example, a plaintiff's "failure to apply for a position does not bar her claim if she can show that such an application would have been a futile gesture." *Shackelford v. Deloitte & Touche, L.L.P.,* 190 F.3d 398, 406 (5th Cir.1999) (citing *Teamsters v. United States,* 431 U.S. 324, 365, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)). "In such a case, however, the plaintiff must present 'overwhelming evidence of pervasive discrimination in all aspects of the employer's internal employment practices.'" *Dupont–Lauren,* 994 F.Supp. at 818 (citing *Kreuzer v. Brown,* 128 F.3d 359, 366 n. 2 (6th Cir.1997)).

■ As previously noted, State Farm informs its employees of promotional opportunities through an internal job posting process. Interested employees must submit requests in the designated form in order to be considered for vacant positions announced through the posting system. Although Harris argues in her opposition to summary judgment that she did not apply for the SF–7 positions because of the perceived futility, she admitted in her deposition that the actual reason she did not apply for these positions was because she *could not.* According to Harris, she could not apply for these positions because she no longer worked in the death claims area. Harris argues that she was discriminatorily transferred to another area so that she would no longer be qualified for the SF–7 positions which State Farm intended to create in the death claims area. However, Harris's argument fails because the transfer was at her request and the SF–7 positions did not become available until 1999, three years after Harris was transferred out of the death claims area.

The Court finds that Harris was not qualified for the March 1999 SF–7 pro-

motions because she was not employed in the death claims area. The question of whether she applied for the position or whether it would have been futile for her to apply is therefore moot. Accordingly, Harris has failed to meet her *prima facie* case of race discrimination in State Farm's failure to promote her to these positions, and State Farm is entitled to summary judgment.

## D. ADEA

The ADEA makes it unlawful for an employer to refuse to hire, to discharge, or to otherwise discriminate against any individual with respect to the compensation, terms, conditions, or privileges of employment, because of that individual's age. 29 U.S.C. § 623(a)(1).

■ In considering Harris's ADEA claims, this Court again applies the *McDonnell Douglas* burden shifting test. If Harris establishes a *prima facie* case of age discrimination, the burden shifts to State Farm to articulate a legitimate, nondiscriminatory reason for its failure to promote Harris. If State Farm satisfies this burden, the burden shifts back to Harris, who must prove that the reasons offered by State Farm were not its true reasons, but were instead a pretext for discrimination.

Harris claims that she was discriminated against because of her age when she was denied promotions to the position of Life Health Trainee in October of 1998 and to the SF–7 positions in March of 1999. State Farm denies these allegations, and asserts that as a matter of law, Harris cannot establish a *prima facie* case of discrimination. Alternatively, State Farm argues that even if Harris were to establish a *prima facie* case of discrimination, she cannot rebut State Farm's legitimate, nondiscriminatory reasons for failing to promote her. Harris argues that State

Farm's proffered reasons are pretextual and false.

■ To establish her *prima facie* case, Harris must show that (1) she was forty years of age or older at the time of the failure to promote, and, thus, a member of a protected class; (2) she applied and was qualified for the positions; and (3) either (i) someone less than forty years of age was hired for the positions, (ii) someone younger was hired for the positions, or (iii) she was otherwise not hired because of her age. *See Bennett v. Total Minatome Corp.*, 138 F.3d 1053, 1060 (5th Cir.1998); *Williams v. Tex. Dep't of Transp.*, No. 3:95–CV–2230–BC, 1997 WL 53142, at *3 (N.D.Tex. Jan.30, 1997).

It is undisputed that the first element is met. Harris was over forty in October of 1998, and March of 1999, and, thus, a member of a protected class. It is also undisputed that the second element is met with respect to the October 1998 Life Health Trainee promotion because Harris applied and was qualified for this position.

State Farm argues that Harris cannot establish the third element, because there is no evidence of the ages of the individuals who received the promotions in question.

■ The October 1998 Life Health Trainee position was filled by Harrison. The March 1999 SF–7 positions were filled by Martin and Lane. However, Harris has failed to produce any evidence of Harrison's, Martin's, or Lane's ages. In fact, the only statement regarding the ages of other State Farm employees is Harris's allegation that all of the twenty white employees that she trained since 1982 were younger than she. See Harris's Complaint ¶ 9. Harris neither states who the twenty white employees are, nor does she state whether Martin or Lane are two of those employees. Thus, there is no competent summary judgment evidence to support a finding that either persons younger than forty years of age were promoted to these positions, that persons younger than Harris were promoted to these positions, or that Harris was not promoted because of her age. Accordingly, Harris has failed to meet her *prima facie* case of age discrimination, and State Farm is entitled to summary judgment dismissing Harris's ADEA claims.

## E. Section 1981

■ Section 1981 prohibits race discrimination in the making and enforcement of contracts. *See* 42 U.S.C. § 1981. Employment discrimination claims brought under § 1981 are analyzed under the evidentiary framework applicable to claims arising under Title VII. *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309, 311 (5th Cir.1999) (citing *Tanik v. S. Methodist Univ.*, 116 F.3d 775, 775 (5th Cir.1997)).

State Farm argues that Harris's § 1981 claim is subject to a one-year prescriptive period, and, thus, is limited to the March 1999 SF–7 positions. State Farm further argues that, for the same reasons asserted in the Title VII discussion, Harris has failed to establish a claim of race discrimination under § 1981.

■ "A section 1981 claim is best characterized as a tort under Louisiana law and is, therefore, governed by the one-year prescriptive period for delictual actions dictated by La. Civ.Code art. 3492. The filing and processing of charges with the EEOC under Title VII does not toll the running of the state prescriptive period governing section 1981 claims." *Taylor v. Bunge Corp.*, 775 F.2d 617, 618 (5th Cir.1985) (citing *Jones v. Orleans Parish Sch. Bd.*, 679 F.2d 32, 35 (5th Cir.1982); *Johnson v. Railway Express Agency, Inc.*,

421 U.S. 454, 465–66, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975)).

On December 16, 1999, Harris filed a Complaint seeking relief pursuant to Title VII, the ADEA, and § 1981. Thus, any § 1981 claims regarding promotions or events occurring prior to December 16, 1998, are time-barred and DISMISSED.

█ Consequently, this Court's analysis is limited to State Farm's alleged failure to promote Harris to the SF–7 positions in March of 1999. For the reasons set forth under the Title VII discussion, Harris has failed to meet her *prima facie* case of race discrimination in State Farm's failure to promote her to these positions. Accordingly, State Farm is entitled to summary judgment dismissing Harris' § 1981 claim.

## F. Battery

The only claim remaining before this Court is Harris's battery claim under state law.

█ "A federal district court may entertain state law claims pursuant to its 'supplemental jurisdiction', provided that the claims arise from the case or controversy over which the district court had original jurisdiction. When all federal claims are dismissed, the district court enjoys wide discretion in determining whether to retain jurisdiction over the remaining state law claims." *Hubbard v. Blue Cross & Blue Shield Assoc.*, 42 F.3d 942, 947 (5th Cir.1995); 28 U.S.C. § 1367; *Welch v. Thompson*, 20 F.3d 636, 644 (5th Cir., 1994). In fact, the Fifth Circuit has held that, "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Parker & Parsley Petroleum v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir.1992), *reh'g denied*, 985 F.2d 555 (5th Cir.1993). If the state law claims are dismissed, § 1367(d) provides that the period of limitations on the state law claim is tolled while the claim is pending in federal court, and for a period of at least 30 days after its dismissal. *Id.*

█ Harris's battery claim does not arise out of federal law. Further, although Harris and State Farm are citizens of different states, the facts, viewed in the light most favorable to Harris, do not support a finding that the amount in controversy exceeds $75,000.00. A Louisiana state court would provide a more appropriate forum to adjudicate the remaining tort law issue.

Therefore, having considered the interests of judicial economy, convenience and fairness to the parties, the Court declines to exercise supplemental jurisdiction over Harris's battery claim. Accordingly, Harris' state law battery claim is dismissed without prejudice, and State Farm's motion for summary judgment on this claim is denied as moot.

## CONCLUSION

For the foregoing reasons, "Defendant State Farm Life Insurance Company's Motion, with Incorporated Memorandum in Support, to Strike or Exclude *In Limine* Certain Exhibits to Plaintiff's Opposition to Defendant's Motion for Summary Judgment" [Doc. No. 84] is DENIED.

Further, "Defendant State Farm Life Insurance Company's Motion for Summary Judgment" [Doc. # 49] is GRANTED IN PART. Harris's race and age discrimination claims pursuant to Title VII, the ADEA, and § 1981 are DISMISSED WITH PREJUDICE. Harris's battery claim is DISMISSED WITHOUT PREJUDICE.